UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES BREWER,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF WEST HARTFORD, et al.,<br>    Defendants. | Civil Action No.<br>3:05cv849 (SRU) |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

On November 3, 2006, defendant Joseph O'Brien ("O'Brien") filed a motion for summary judgment, asking me to dismiss plaintiff James Brewer's claims against him. On November 30, 2006, defendant Town of West Hartford filed a motion for summary judgment, and on December 15, 2006, defendants James Strillacci, Jack Casey, Dean Kulpanowski, Brian Hill, and Kevin McCarthy (the "Police Defendants") moved for summary judgment as well. On August 20, 2007 I heard oral argument by all parties. For the reasons that follow, I grant the defendants' motions for summary judgment and dismiss Brewer's claims.

**I.**     **Factual Background**

James Brewer was an attorney in West Hartford until October 2004, when he voluntarily agreed to a suspension from the practice of law for medical reasons. As an attorney he worked on a number of federal civil rights claims against municipal officials in West Hartford. He plans on applying for readmission to the bar, and the defendants know that fact.

On May 4, 2004, Brewer took the deposition of Lieutenant Jack Casey of the West Hartford Police Department in a case concerning the suicide of Todd Smith, a West Hartford Police officer. During the deposition, Brewer discovered that Casey worked in Youth Services for West Hartford, the town in which Brewer's son attends school. Brewer attempted to ask

Casey several questions regarding Brewer's son. O'Brien, the town attorney defending Casey in the deposition, objected to the questions and instructed Casey not to answer, and ultimately ended the deposition. At that point, O'Brien and Brewer exchanged verbal profanities, and Brewer became angry and violent, physically attacking Casey and O'Brien. Casey stood between Brewer and O'Brien, and Brewer may have broken one of Casey's ribs in the altercation.

Following that incident, O'Brien and Casey both filed professional grievances against Brewer. In addition, Brewer was arrested for and charged with a number of felonies and misdemeanors.

Brewer withdrew from the practice of law following the Casey deposition. In September 2004, the Statewide Grievance Committee found probable cause to believe that Brewer had engaged in unethical conduct at the deposition, and bound the matter over to Connecticut Superior Court. In October 2004, Brewer voluntarily accepted a 90-day suspension from the practice of law, and agreed to seek counseling to address anger management and other issues.

On March 24, 2005, the Superior Court, with Judge Robert Holzberg presiding, held a hearing to determine whether Brewer should be readmitted to the practice of law. At that hearing, O'Brien requested that, if Brewer were readmitted, he no longer be permitted to represent plaintiffs in suits against West Hartford.

On May 6 and 7, 2005, Kulpanowski, Casey, Hill and McCarthy prepared and filed police reports that together form the basis of Brewer's claims in this case. Each report describes an encounter between Brewer and one or more members of the West Hartford Police Department that occurred in the days and months immediately preceding. The Police Defendants forwarded their reports to O'Brien, who forwarded them to the attorney prosecuting the grievance against

2

Brewer. Brewer now contends that the reports were defamatory.

On June 14, 2005, at a grievance proceeding, Judge Holzberg ordered that Brewer undergo an independent medical examination ("IME"). Brewer did not subsequently undergo the IME, but did have his attorney submit a letter communicating Brewer's decision to voluntarily resign from the practice of law. Judge Holzberg disbarred Brewer on July 21, 2005.

On July 9, 2005, Brewer was acquitted of numerous criminal charges but convicted of breach of peace. At that proceeding, Judge Jon Blue ordered a September 16, 2005 presentment. Brewer did not appear at the presentment, and Judge Blue disbarred Brewer with the added condition that Brewer was not to apply for readmission to the bar for a period of five years.

Brewer has now brought suit against several West Hartford officials in their individual and official capacities, and against the Town of West Hartford, claiming that the defendants have deprived him of the means of earning a livelihood as an attorney, have fabricated and published materially false reports about Brewer, and have otherwise violated Brewer's constitutional and common law rights. Brewer claims that each defendant acted intentionally, with malice, and under color of law to deliberately deprive Brewer of the means to return to the practice of law, thereby depriving him of his protected property and liberty interest to practice law. He also claims that defendants intended to damage Brewer's reputation and have in fact done so.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; accord *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

B. Defamation

Brewer brings both a state law defamation claim and a constitutional defamation claim. He brings the constitutional defamation claim as a procedural due process claim. The elements of a defamation claim under Connecticut law are discussed below. To sustain a constitutional defamation claim, Brewer must meet a "stigma plus" standard, adequately alleging that the defendants have stigmatized his reputation and that there has been an additional injury to a protected liberty or property interest. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2004) ("[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest"). For either the state or constitutional claim to survive, Brewer must have pled facts and introduced evidence that, when viewed in the most favorable light, prove defamation.

5

Under Connecticut law, "a cause of action for defamation requires four essential elements: (1) a false statement of fact; (2) unprivileged publication of the statement; (3) publication caused by negligent or intentional conduct; and (4) injury to reputation. Truth is a complete defense to a suit for defamation." *Timbro v. Hertler*, 2006 WL 1230560 at *3 (Conn. Super. Ct. April 24, 2006) (internal citations omitted) (citing *Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 316, 477 A.2d 1005 (1984); *Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 27, 662 A.2d 89 (1995)). A defamatory statement must be a factual statement, rather than an opinion. *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 795, 734 A.2d 112, 129 (1999); *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111, 228 A.2d 1317, 1321 (1982) ("An opinion . . . is a personal *comment* about another's conduct, qualifications or character that has some basis in fact").

In addition, because a defamatory statement must be false, truth is a defense to a claim of defamation. *Timbro*, 2006 WL 1230560 at *3; *Daley*, 249 Conn. at 795; *Bartlett v. Flaherty*, 155 Conn. 203, 205, 230 A.2d 436, 436 (1967). At the center of Brewer's claims against the defendants are three police reports, each describing incidents between Brewer and certain of the Police Defendants. Because those statements must be materially false in order to be actionable, I must determine whether Brewer has presented evidence that adequately call the truthfulness of the reports into question, i.e., evidence sufficient to permit a jury to render a verdict in Brewer's favor. Each report contains both an official report – signed both by a detective who wrote the report based on statements from the defendant officers and also by defendant Lieutenant LaSata, who reviewed the reports – and a somewhat broader narrative statement submitted by the officer. I have reviewed both the official reports and the underlying narrative statements. Because

6

Brewer has raised claims against the defendant officers based on their statements, my analysis focuses on the underlying statements made by the Police Defendants that formed the basis for the official reports. I proceed below, report-by-report and statement-by-statement, analyzing whether genuine issues of material fact such that preclude entry of summary judgment.

       *i.*      *The Kulpanowski Report*

Brewer and defendant Kulpanowski encountered each other outside a hardware store in Newington in March 2005. On May 6, 2005, Kulpanowski wrote a statement containing the following pertinent content:

    a.    "I looked up out through the front windshield and saw Atty. James Brewer standing in front of my truck looking at me. Mr. Brewer pointed his finger at me and said something like 'Are you following me.'"

Brewer denies this statement. Brewer Dep at 139: 4-8.

    b.    "Brewer stood there for about ½ min. and continued to talk to me in a loud voice. He then walked from right to left and began yelling at me in a very agitated manner. I had at that point not said anything to him."

Brewer contends that Kulpanowski initiated the verbal exchange between them. Brewer Dep. at 133: 7-11.

    c.    "As he walked to his drivers [sic] door, he yelled things like 'Kulpanowski, you fucking asshole,' 'you fucking pussy,' and other derogatory things I can't recall at this time."

Brewer denies those exact statements, but does admit saying to Kulpanowski, "How's it feel to be mentally retarded?" Brewer Dep. at 133: 10-11; 135: 11-19. While not exactly the same, the admitted statement is materially similar to the denied statements. Considering that Kulpanowski wrote that Brewer "yelled things like" the denied statements, the contention in the report is not materially false.

7

d. "Mr. Brewer got into his vehicle still yelling obscenities and seemed to be very upset."

Brewer neither confirms nor denies this statement, which sets forth Kulpanowski's opinion that Brewer seemed upset.

e. "Mr. Brewer apparently made a U-Turn in the parking lot and pulled rapidly into the path of my truck. I had to jam on the brakes to avoid hitting the drivers [sic] side of his vehicle. He gunned the engine while holding and releasing his brakes so that his vehicle jumped forward and stopped several times. It appeared that he wanted me to think he was pulling out so I would go forward and hit his car."

Brewer contends that he did not try to cause a collision with Kulpanowski's car, but admits that their cars may have been aligned in a manner similar to Kulpanowski's description. Brewer Dep. at 142: 18 - 143: 2.

f. "When he left, he gave me the (middle) finger as he drove away."

Brewer contends that Kulpanowski made an obscene gesture to Brewer, and also admits that he "probably flipped [Kulpanowski] off." Brewer Dep. at 344: 22 - 345: 24.

### ii. *The Casey Report*

On May 3, 2005, Brewer and defendant Casey encountered each other in a public parking lot in close proximity to the West Hartford Police Department. Brewer was seated in a car parked next to Casey's car. On May 6, 2005, Casey wrote a statement saying in pertinent part:

g. "The vehicle appeared to be occupied by one man who was in the driver's seat. The occupant appeared to be manipulating a camera with his hands and it appeared as though the lens was zoomed out or there was a zoom lens attached. . . . He appeared to be 'fiddling' with the camera."

Brewer admits that he photographed Casey's car. Compl. at 3; Opp. to Mot. to Dismiss at ¶ 14; Brewer Dep. at 146: 15-25; 149: 15-17.

> h. "Based on Brewer's admission of mental problems, his admission that he is being medicated, his explosive behavior in the past, I was very concerned due to his close proximity to my vehicle and my person."

Brewer admits that he has undergone mental health treatment and takes medication as part of his treatment. O'Brien Mem. Supp. Summ. J. Ex. A-4 at 112: 10 - 113: 19 (Mar. 24, 2004 Hr'g). In addition, Brewer displayed explosive behavior towards Casey at the Casey deposition. Casey is expressing his concern based on those admitted facts.

> i. "It appears Brewer is running some sort of surveillance of me, the police department, or the members of the police department."

Casey is expressing his opinion that Brewer is surveilling him or the police department. In addition, Brewer admits that he "wouldn't . . . argue with [Casey] about it." Brewer Dep. at 151: 9-17.

### iii. The Hill/McCarthy Report

On May 7, 2005, Brewer (accompanied by his children) and defendants Hill and McCarthy encountered each other at a doughnut shop in Hartford. On May 7, 2005, Hill and McCarthy each wrote statements describing the incident. Hill's stated in pertinent part:

> j. "Brewer entered the store and immediately began glaring at me. He appeared extremely agitated, he wore dirty clothes and appeared to have not slept. His hair was uncombed and disorderly."

This statement is, in part, Hill's opinion based on Brewer's physical appearance.

> k. "I recalled reading in the paper [Brewer] had recently been treated at the Institute of Living for some type of physcological [sic] disorder."

A March 25, 2005 article in the Hartford Courant stated that "Brewer testified that he spent a month in an outpatient program at the Institute of Living in Hartford, and is taking anti-depressants." Katie Melone, *Decision on Law License Goes to Judge; Questions Lawyer's*

9

*Overreactions*, Hartford Courant, Mar. 25, 2005, at B7. Brewer also stated in his deposition that

he had recently been treated at the Institute of Living for emotional and psychological disorders.

Brewer Dep. at 110: 6-16.

> l. "I believed at that time Brewer would cause a disturbance and recalled he has historically been assaultive towards police."

It is Hill's opinion that Brewer would cause a disturbance. Brewer had in the past been

assaultive towards police, at the Casey deposition.

> m. "He loaded the children in his vehicle and then stood outside the drivers [sic] door and began glaring at me again through the store window."

Brewer neither confirms nor denies this statement.

> n. "Brewer then produced a camera and began photographing the store and Officer McCarthy and I who continued to remain silent - vexed by Brewer's odd behavior. After taking several pictures, laughing and waving the whole time, Brewer left the lot."

Brewer concedes that he is "pretty sure [he] took a picture of them," Brewer Dep. at 105: 21-24,

and that he believes ha also took "a picture of their two police cars parked next to each other in

Hartford having a nice Sunday morning coffee break," Brewer Dep at 112: 23 - 113: 1; *see also*

Brewer Dep. at 343: 5-13.

> o. "I found Brewer's behavior to be characteristically aggressive and bizarre . . . . I believe Brewer continues to have the potential to be dangerous towards police."

It is Hill's opinion that Brewer's behavior is aggressive and bizarre, and that Brewer has the

potential to be dangerous towards police.

> p. "Although he did not get physically confrontational today I believe it was largely due to the presence of the children who acted as mental restraint for Brewer's clearly aggressive behavior."

10

It is Hill's opinion that Brewer was not physically aggressive due to the presence of his children.

McCarthy's statement said in pertinent part:

> q. Brewer "has recently been treated for anger issues, and is known to be mentally unstable and display fits of rage at a moments [sic] notice when in the presence of police officers."

Brewer had been treated recently for anger management issues. Brewer Dep. 109: 15-19. His prior physical confrontation at the Casey deposition qualifies as a fit of rage in the presence of police officers.

> r. "Mr. Brewer left the store, put his children into his car and before getting in himself, glared back through the window of the store at Officer Hill and me."

Brewer neither confirms nor denies this statement.

> s. "He . . . rolled down his passenger window, and began to frantically wave his right hand and laugh as he did so."

Brewer neither confirms nor denies this statement.

> t. "He then reached down and produced a camera and began to take a series of photographs of Officer Hill and me."

Brewer concedes that he is "pretty sure [he] took a picture of them," Brewer Dep. at 105: 21-24, and that he believes ha also took "a picture of their two police cars parked next to each other in Hartford having a nice Sunday morning coffee break," Brewer Dep at 112: 23 - 113: 1; *see also* Brewer Dep. at 343: 5-13.

> u. "Ms. Tome said Brewer then asked her 'is this Hartford or West Hartford?', and then drove east, then south out of the lot."

Brewer neither confirms nor denies this statement.

    iv.    *Analysis*

11

As discussed above, the defendants are not liable for any allegedly defamatory statements that are true. Neither are they liable for statements of opinion rather than fact. Accordingly, statements (c), (f), (g), (h), (i), (k), (l), (n), (o), (p), (q), and (t) are not defamatory and thus cannot support a state law or a constitutional defamation claim.

The remaining allegedly defamatory statements are statements of fact that Brewer affirmatively denies or that he has not addressed through his deposition testimony or pleadings. The surviving contentions in the Kulpanowski report are that Brewer pointed his finger at Kulpanowski and asked if he was following Brewer, that Brewer was agitated, that he yelled obscenities at Kulpanowski, and that he engaged in some sort of driving confrontation with Kulpanowski (admitting that their cars may have aligned in the manner that Kulpanowski describes).

Casey's report consists entirely of statements that Brewer admits and statements of Casey's opinion. Accordingly, that report is not defamatory.

From the Hill and McCarthy reports, the surviving contentions are that Brewer glared at the officers, wore dirty clothes and had uncombed hair, laughed while waving his hand at the officers, and asked a woman if they were located in Hartford or West Hartford.

First addressing the Hill and McCarthy report, the surviving statements are not defamatory. Connecticut law defines defamation as "that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him." *See, e.g., Devito v. Schwartz*, 66 Conn. App. 228, 234, 784 A.2d 376, 381 (2001) (quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984), p. 773). Statements that Brewer looked disheveled and

glared at the officers on a morning trip to the doughnut shop may suggest that Brewer was not at his best that day, but do not rise to the level of defamation. The Hill and McCarthy report is not defamatory.

Finally, the Kulpanowski report presents contentions of behavior somewhat more troubling than the Hill/McCarthy report, particularly the verbal obscenities. Although Brewer denies making those statements, he does admit to engaging in a verbal altercation with Kulpanowski and calling him "mentally retarded." Who initiated the altercation is less important than the content of the altercation. Both Brewer and Kulpanowski indicate an emotional and contentious encounter. The conduct that the Kulpanowski report attributes to Brewer is not materially different from the behavior that Brewer admits. The Kulpanowski report is not defamatory.

C. Substantive Due Process

In addition to his state law and constitutional defamation claims, Brewer argues that the defendants have violated his constitutional rights not to be deprived of substantive due process. For a substantive due process claim to lie, the conduct of the government employees' involved would have to be "arbitrary in the constitutional sense," *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992), a phrase understood to mean "conscience shocking." *Id.* at 128. Under Second Circuit law, substantive due process violations lie where government conduct "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F.3d 75, 93-94 (2d Cir. 2005). The test is whether the alleged conduct rises to a level of abuse by government officials that is "malicious and sadistic" or "intended to oppress or to cause injury" or "designed for no legitimate government purpose." *Id.*

13

In support of his substantive due process claim, Brewer relies on cases where government conduct truly does shock the conscience. *E.g., Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004) (government officials deliberately framed innocent men for murder; Judge Gertner recently awarded those men over $100 million in damages); *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981) (police officer unjustifiably pointed his loaded service revolver at a motorist whom he did not arrest); *Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003) (substantive due process violation where sheriff pointed loaded firearm at deputy and forced unwanted sexual touching on female deputy; no violation where he forced unwanted sexual touching on male deputies). Here, Brewer's claims are based on police reports containing allegedly defamatory statements, many of which he admits and many of which are expressions of opinions. That the officers drafted reports based largely on true information, even if they engage in hyperbole or exaggeration to some extent, is not conscience-shocking, and does not constitute a substantive due process violation.

### D. Claims against the Town of West Hartford

Brewer brings claims against West Hartford under 42 U.S.C. § 1983 and argues that the municipality is liable because O'Brien acted on behalf of the Town when he provided the police reports to the grievance committee and the Superior Court. Mem. Opp'n. West Hartford Summ. J. at 7. To establish municipal liability, Brewer must establish (1) a municipal policy or custom that was (2) the "moving force" of the violation of his federally protected right. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Here, none of the defendants has violated Brewer's federally protected rights. Because Brewer's rights have not been violated, his claims against the Town fail as a matter of law. *See, e.g., Dodd v. Norwich*, 827 F.2d 1, 8 (2d

Cir. 1987). The claims against West Hartford are therefore dismissed.

**III.    Conclusion**

Because none of the police reports is defamatory, Brewer's state law and constitutional defamation claims are dismissed. Because preparation and distribution of the reports do not give rise to a substantive due process violation, Brewer's substantive due process claim is dismissed. The defendants' motions for summary judgment (**docs. # 62, 66, 70**) are granted. The clerk shall close this file.

Dated at Bridgeport, Connecticut, this 28th day of September 2007.

/s/
Stefan R. Underhill
United States District Judge